## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DAVION D. PIPKINS,

                Plaintiff,

-vs-

CITY OF DETROIT, MAYOR MICHAEL
DUGGAN,  JAMES CRAIG, JEVON
JOHNSON, ILASEO LEWIS, BRANDON
COLE, THOMAS GRZYWACZ,  AHMED
HAIDAR, CORY YANKEY,
TIMOTHY  ORAVETZ, STEVEN DUDZIC,
and JOHN DOES 1-10

                Defendants.

Case No.: 23-cv-10614
Hon.  Linda V. Parker
Mag. David R. Grand

> **PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF COMPLETE RESPONSES TO 1st AND 2nd REQUESTS FOR PRODUCTION AND INTERROGATORIES AND BRIEF IN SUPPORT**

---

Julie H. Hurwitz (P34720)
Dayja S. Tillman (P86526)
**GOODMAN HURWITZ & JAMES, PC**
1394 W. Jefferson Avenue
Detroit, MI 48207
(313) 567-6170
jhurwitz@goodmanhurwitz.com
dtillman@goodmanhurwitz.com
mail@goodmanhurwitz.com

Philip J. Hiltner (P77913)
Chelsea M. Grimaldi (P85585)
**CITY OF DETROIT LAW DEPT.**
2 Woodward Ave., Ste. 500
Detroit, MI 48226
(313) 237-6390
hiltnerp@detroitmi.gov
chelsea.grimaldi@detroitmi.gov

*Attorneys for Defendants*

Allison Kriger (P76364)
**LARENE & KRIGER PLC**
500 Griswold St., Ste. 2400
Detroit, MI 48226
(313) 967-0100
akriger@larenekriger.com

*Attorneys for Plaintiff*

_____

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF ALL
DOCUMENTS AND THINGS RESPONSIVE TO REQUESTS FOR
PRODUCTION AND TO PROVIDE FULL AND COMPLETE ANSWERS
TO INTERROGATORIES**

**NOW COMES** Plaintiff DAVION PIPKINS, by and through his attorneys, GOODMAN HURWITZ & JAMES, P.C. and LARENE & KRIGER, P.L.C., and pursuant to Federal Rules of Civil Procedure 26, 34, and 37, and Local Rules 7.1 and 37.1, hereby respectfully requests that this Honorable Court enter an Order compelling Defendants to respond fully and completely to *Plaintiff's First Expedited*[1] *Requests for Production of Documents* ["RFPs"]*, Plaintiff's Second Request for Production of Documents* ["RFPs"]*,* and *Plaintiff's Second [sic] Set of Interrogatories,* and whatever other relief this Court deems reasonable and just under the circumstances, including but not limited to reasonable attorney's fees and costs pursuant to Fed. R. Civ. P. 37(5). In support of his Motion, Plaintiff states the following:

1.     This is a 42 U.S.C. § 1983 civil rights case arising out of the unjustified beating, assault, and malicious prosecution of Plaintiff caused by the Defendants'

---

[1] It should be noted that Plaintiff's *First "Expedited" RFP*s were served pursuant to an Order from the Court allowing Plaintiff to conduct expedited discovery prior to the Rule 26 Conference, in an attempt to obtain the identities of the officers who assaulted/falsely arrested Plaintiff, after nearly three years of unsuccessfully attempting to obtain that information prior to filing his Complaint herein. *See* ECF No. 7.

actions on or about May 29, 2020, while he was peacefully exercising his First Amendment right to protest after the murder of George Floyd. [ECF No. 1].

2. On or about May 8, 2023, Plaintiff served his *First Expedited Requests for Production of Documents and Things* [First RFPs] [**Exh. 1**][2] on Defendants City of Detroit, Duggan, Craig, Yankey, and Detroit Police Officers John Doe Officers 1-10 (hereinafter collectively "Defendants").

3. On or about June 28, 2024, Plaintiff served on Defendants his *Second Request for Production* [Second RFPs], **[Exh. 2]**, and his *Second Set of Interrogatories,* **[Exh. 3]**.

4. These discovery requests specifically seek documents and information critical to Plaintiff's claims against both the individually named supervisory Defendants and the Defendant City of Detroit for its municipal liability, pursuant to *Monell v. Department of Social Services,* 436 U.S. 658 (1978). As well, these discovery requests seek information that will enable Plaintiff to identify the individual officers who unlawfully assaulted, injured, and arrested him, the identities of whom have yet to be determined.

5. With respect to his claim against Defendant City of Detroit, Plaintiff asserts that Defendants maintained customs, policies, or practices that directly

---

[2] It should be noted that also included with the *Expedited RFPs* is a single Interrogatory that is not the subject of this Motion.

contributed to constitutional violations suffered by Plaintiff, including excessive force, false arrest, and wrongful prosecution. The legal basis for the discoverability of this material is fully discussed in Plaintiff's Brief in Support, attached hereto.

6.     Despite literally months of attempting to obtain more complete responses to Plaintiff's discovery requests, as of the date this Motion was filed, there remain outstanding discovery requests that Defendants have failed and/or been unwilling to produce.  The history and details of these outstanding matters are set forth below.

**First Requests for Production, [Exh. 1]**

7.     Plaintiff's *First Request for Production* **[Exh. 1]**, dated May 8, 2023, seeks, *inter alia*, the following documents within Defendants' possession, custody and/or control:

> a. **RFP Nos. 1-5**: Any and all lists, Daily Details, memoranda, notes, emails, and any and all records and/or writings of any kind that identify by name, precinct number and rank of each and every [**Mobile Field Force, Special Ops, Strike Force, Gang Intel, and Tactical Ops**] officer who was deployed to the downtown Detroit area on the night of May 29, 2020.

8.     On or about May 23, 2023, Defendants served their purported *Responses to Plaintiff's First Requests for Production and Interrogatories*, [**Exh. 4**], which were highly deficient and in violation of Fed. R. Civ. P. 34, as follows:

> a. Defendants assert boilerplate objections to each and every one of Plaintiff's six requests, including:
>
>> i.   Overly broad and vague;
>>
>> ii.  Seeks information outside the scope of the Court's Order on Expedited Discovery;

     b.  Defendants **further** attempt to avoid disclosure of several documents (RFP #s 1, 3, 4, 5), by claiming that such documents are not currently available without providing any certification of a reasonable search or explanation for their unavailability, as required under **Fed. R. Civ. P.** **26(g)**.

9.    While Defendants produced partial records responsive to Plaintiff's requests [*See* **Exh. 4**, *Def Responses to Pls First Expedited Request for Production*, 5/23/23, RFP Nos. 2, 6; **Exh. 5**, *Def Suppl Response to Pls First Expedited Request for Productions,* 8/28/23, RFP No. 1], Defendants' *Supplemental Responses* failed to fully comply with their discovery obligations. For example, Defendants' supplemental production was limited to sparse activity logs and daily details, failing to include critical records such as the logs of officers confirmed to have been at the scene, including officers from the Strike Force, Gang Intel, Tactical Ops, and Special Ops units. Many of the activity logs produced are incomplete and non-informative, often instructing to "see electronic logs" or "electronic run-sheets" (Pipkins000031-000072) and refer to body-worn camera (BWC) footage (Pipkins000047-000063). [*See* **Exh. 6,** Pipkins000030-000088]**.** These references strongly suggest the existence of additional responsive materials that Defendants failed to produce.

10.  On July 9, 2024, Plaintiff sent Defendants a detailed deficiency letter outlining outstanding discovery, including officer identifications, complete activity logs, and body-worn camera footage, and requested Defendants supplement their responses accordingly. [*See* **Exh. 7**, *Pls Deficiency Letter re: First RFPs, 7/9/24*].

11.  Defendants did not respond to the July 9, 2024, deficiency letter until

four (4) months later, on or about November 20, 2024, **[Exh. 8,** *Defs Response to Pls Deficiency Letter re: First RFPs*, 11/20/24**]**; only after this Court intervened at Plaintiff's request. Specifically, Plaintiff emailed the Court on October 15, 2024, seeking a status conference, in pertinent part, regarding outstanding discovery issues, **[Exh. 9,** Pls. Email to Case Mgr., 10/15/24**].** This Court then convened a series of status conferences, the first of which was held on October 15, 2024 **[*see* ECF No. 59]** and the second on November 6, 2024 [*see* **ECF. No. 64**].

12.   As a result of the discussion at the status conference on November 6, and in anticipation of a third status conference scheduled on November 25, 2024, this Court ordered the parties to meet-and-confer and provide an update to the Court by or before November 22, 2024 **[*see* Exh. 10,** *Minute Entries*, 11/6/24**]**. As stated earlier, Defendants finally sent an email in response to Plaintiff's July 9 deficiency letter on November 20, 2024, **[*see* Exh. 8]**, two days before the parties' meet-and-confer.

13.   In their November 20, 2024, Response to Plaintiff's deficiency letter, Defendants acknowledged gaps in their production and agreed to produce the following:

   a. The specific electronic logs and run sheets referenced in Plaintiff's deficiency letter [**Exh 8**, p. 4];

   b. Specific body-worn camera footage identified as missing by Plaintiff; [**Id**.]

14.   At the court-ordered meet-and-confer, held on November 22, 2024,

5

Defendants reiterated their intention to supplement their Responses to Plaintiff's *First RFP and Rogs* with the above documents and things. [*See* **Exh. 11**, *Plf's Ltr. to Ct re Discovery Deficiencies*, 11/23/24**,** p. 2].

15.   Despite these representations, Defendants have yet to produce the materials they agreed to locate and provide. Their continued failure to supplement their responses violates the requirement set forth in Fed. R. Civ. P. 26(e), that parties timely amend or supplement discovery responses when additional material becomes available.

16.   As more fully discussed in his Brief in Support, attached hereto, Plaintiff's *First Requests for Production* seeking materials necessary to identifying the officers responsible for Plaintiff's assault on May 29, 2020, and to assessing their conduct during the protests are well within the bounds of permissible discovery and are integral to Plaintiff's individual liability claims against the individual Defendants and to his *Monell* claim against Defendant City of Detroit.

## Second Request for Production, [Exh. 2]

17.   On June 28, 2024, Plaintiff served Defendants with his *Second Request for Production of Documents*. Plaintiff's Second RFPs [attached hereto as **Exhibit 2** for reference and summarized below] seeks, among other things, the following documents within Defendants' possession, custody and/or control:

    a.   **RFP No. 2**: Photographs identifying each and every current or former member of the Detroit Police (DPD) Mobile Field Force Unit and

Special Operations Unit who were assigned to work on May 29, 2020, between the hours of 6:00 pm and 6:00 am on May 30, 2020, or, alternatively, a photograph of each officer assigned to those details/units as of those dates.

b. **RFP Nos. 3, 7, 8**: Hiring records, training records, psychological records, evaluations commendations, promotions, demotions, use of force reports, reports of discharge of firearms, disciplinary history (regardless of the outcome), suspensions, reprimands and citizens complaint investigations and dispositions, citizen complaints, grievances, and any other claim(s) of misconduct for each named defendant, as well as citations to civil or criminal court actions in which any defendant is or was named as parties between 2014 and present.

c. **RFP No. 4**: Any/all documentation identifying by name, precinct number, and rank of every DPD member who was dispatched, deployed, or assigned to the area in and around Jefferson Avenue and Randolph Street in the City of Detroit after 5:00 pm on May 29, 2020.

d. **RFP Nos. 5, 7**: Material relating to citizen complaint, civil lawsuit, grievance, internal disciplinary investigation, disciplinary action, any other internal investigation, and any other claims of misconduct against a) any and all agents or employees of Defendant CITY's Police Department arising out of the protests in May of 2020 through September of 2020, and b) otherwise assigned to work on May 29, 2020 between the hours of 6:00 pm and 6:00 am on May 30, 2020.

e. **RFP No. 6:** All written policies setting forth the criteria and process for investigating use of force that were in effect on May 29, 2020, when Plaintiff Davion Pipkins was assaulted, pinned down, detained, and ultimately released after being issued with a citation on May 29, 2020.

f. **RFP Nos. 9-10:** Material relating to the use of force by a DPD member against a person who was ultimately not charged with a crime between 2014 and present, along with material relating to any involvement by the Wayne County Prosecutor's Office conducting or overseeing any investigation

g. **RFP Nos. 11-12:** Material relating to DPD's Oath of office; Code of Ethics; Maps of patrol districts/areas; Dispatch/radio codes; Pursuit of suspects; Arrest procedures; Use of force generally; Use of force to effectuate arrests; Report writing procedures; Responding to protests, marches, rallies, riots, rebellions, and peaceful assembly by civilians; The protocol and standard for responding to and protecting the First Amendment activities of citizens in Detroit, including but not limited to: i. The use of force against participants in a First Amendment assembly; ii. Arresting those who are participating in a First Amendment assembly; l. Training, techniques and methodology for mobile field force; m. Training, techniques, and methodology for the following units: i. Downtown services and tactical operations; ii. Special operations (i.e. special events); iii. Bravo team, iv. Vice; v. Narcotics; vi. Gang Intel; and vii. Spin the wheel. N. Documenting deadly and non-deadly uses of force by on-duty Detroit Police Department members; o. Assigning and tracking the locations of on-duty Detroit Police Department members who are dispatched or otherwise sent to respond to, manage, monitor, and/or oversee a protest, march, rally, riot, rebellion, and/or peaceful assembly by civilians; p. Administering and interpreting psychological evaluations of officers, including the effect of such evaluations on hiring, promotion, disciplinary actions, or other employment decisions; q. The roles and responsibilities of the Internal Affairs Department of Section of the Detroit Police Department, including the criteria for assigning internal investigations thereto; r. The criteria and process for assigning internal investigations to any departments, divisions or bureaus within the Detroit Police departments, divisions or bureaus within the Detroit Police Department other than Internal Affairs; s. The criteria and process for investigating uses of force and the propriety of arrests that were in effect on May 29, 2020, when Plaintiff Davion Pipkins was beaten, arrested, and subsequently released.

h. **RFP No. 13:** Material relating to DPD members failing or refusing to do the following during identified demonstrations that occurred in the summer of 2020: provide water to anyone who had been arrested and detained, when water was so requested; to allow detainees to retrieve personal effects during process of arrest and detainment; to turn on or

keep on body-worn camera audio and/or visual, or otherwise keep body-worn camera unobstructed.

i. **RFP Nos. 14, 15, 27:** Any/all videos recorded during the demonstration/protests on May 29, 2020 and material relating to videos that were recorded but destroyed, as well as any material received from other entities.

j. **RFP No. 16:** Material relating to the initiation of the DPD Incident Command System with respect to any and all individual arrests, mass arrests, and the use of force when making aforementioned arrests that occurred on May 29, 2020.

k. **RFP Nos. 17, 22**: Material specific to Defendants' pursuit, assault, detention, and arrest of Plaintiff Davion Pipkins during the demonstrations in Detroit on May 29, 2020, as well as that relating to the pursuit, arrest, and/or transfer of protesters which were generated and/or reviewed by any of the named defendants.

l. **RFP No. 18**: Material relating to body worn camera and dash cameras dying and/or malfunctioning from lack of battery charge between May 29, 2020, and September 30, 2020.

m. **RFP Nos. 19-20**: Material relating to DPD's usage and tactics involving Crowd Control Weaponry, such as but not limited to riot shields and PR-24 police batons between May 29, 2020, and September 30, 2020, as well as initiating the DPD Incident Command System or otherwise authorizing, approving and/or pertaining to the use of force, including the use of Crowd Control Weaponry, against demonstrators, protestors, or other civilians in Detroit on May 29, 2020.

n. **RFP No. 21:** Material relating to DPD members/supervisors engaging in any of the following activities on May 29, 2020: a. ordering the protester/demonstrators to disperse; and/or b. making arrests for failure to disperse following the issuance of any announcement as identified in subparagraph "a" above."

o. **RFP No**. **24**: Material relating to DPD's utilization of tear gas, pepper spray, rubber bullets, and/or long-range acoustic devices between May 25, 2020, and the present date.

p. **RFP No. 25**: Material related to the interaction between Detroit Police Department members and protestors and bystanders from May 29, 2020, through September 30, 2020, relevant to the factual and/or legal allegations contained in Plaintiffs' Complaint, and/or to Defendants' factual and/or legal defenses to those allegations.

q. **RFP #28**: Material related to any experts who has or will be consulted, retained, used by Defendants in connection with the events of May 29–30, 2020, or anticipated to be used in this case. This includes the expert's curriculum vitae; all correspondence, documents, and materials provided to or received from the expert; and any reports, memoranda, or opinions expressed or relied upon by the expert.

18.   In light of the volume of material requested, Defendants asked for 60 additional days to respond to the Requests. Plaintiff agreed to a 45-day extension. On or about September 12, 2024, Defendants served their *Responses to Plaintiff's Second RFPs*, [**Exh. 12**]. Notwithstanding the additional 45 days Defendants were given to respond, their responses were, once again, highly deficient and in violation of Fed. R. Civ. P. 34, as follows:

a. Defendants asserted the following boilerplate objections to 25 of Plaintiff's RFPs:

   i.   Relevance and Proportionality (**RFP Nos. 1-16, 18-25, 27**);

   ii.  Overbreadth and/or Vagueness (**RFP Nos. 2-3, 7, 11-12, 15**);

   iii. Unduly Burdensome (**RFP Nos. 2-3, 7, 11-12, 15**);

   iv.  Duplicative (**RFP Nos. 8, 10-11**);

v.   Undefined (**RFP Nos. 2-3, 11-12, 15**).

b.   Defendants asserted blanket (boilerplate) "privileges" to all but one of Plaintiff's 28 RFPs without either identifying or describing the nature of the purportedly privileged documents or otherwise explaining the bases for asserting the respective privilege:

i.   Attorney work-product privilege (**RFP Nos. 1-14, 16-28**);

ii.   Attorney-client privilege (**RFP Nos. 1-14, 16-28**);

iii.   Deliberative process privilege (**RFP Nos. 1-14, 16-25, 27**);

iv.   Law enforcement privilege (**RFP Nos. 1-4, 6-13, 19, 21-25, 27**).

19.   Plaintiff asserts that Defendants have now waived any such privileges.

20.   Defendants' initial production in response to Plaintiff's *Second RFP* consisted of a limited subset of materials, totaling only 107 pages including daily logs, excerpts from the Detroit Police Department manual, and two case reports, despite the volume of discovery requested.

21.   Notably, Defendants repeatedly referenced productions from a separate action, *Detroit Will Breath, et al v. City of Detroit* (*DWB*), in lieu of directly producing the requested responsive materials. In fact, Defendants, throughout their responses, cited the *DWB* productions for at least 11 of Plaintiff's requests.

22.   On November 21, 2024, Plaintiff sent his Second Deficiency Letter [**Exh. 13**] to Defendants detailing these deficiencies, including their failure to provide:

a.   Complete activity logs and officer daily details (**RFP Nos. 5, 7, 9**)

b.   Written policies for investigating use of force (**RFP No. 6**);

c.   Use of force reports and citizen complaints (**RFP Nos. 9, 10, 15**);

    d. Body-worn camera and dashcam malfunction records (**RFP No. 18**); and

    e. Crowd control weaponry and incident command materials (**RFP Nos. 19-20**).

23. On November 21, 2024, Defendants responded to Plaintiffs Second Deficiency Letter, [**Exh. 14**, *Def Response to Pls Second Deficiency Letter, 11/21/24*], and agreed to:

    a. Provide MAS profile photographs of officers based on a list to be provided by Plaintiff;

    b. Supplement use of force and citizen complaint records, limited to Plaintiff's Monell claim regarding protests of police conduct;

    c. Produce any outstanding body-worn camera footage and dashcam recordings and investigate the justification behind any missing body-worn camera footage.

24. At the November 25 status conference,[3] Defendants reiterated their intention to supplement their productions, including providing the MAS photographs and also agreed to reproduce the *DWB* documents cited in their Response.

25. On or about December 5, Defendants served the reproduced *DWB* documents on Plaintiff. The production totaled over 2,000 pages.

26. Despite the voluminous production of the *DWB* documents, significant

---

[3] As a result of the November 25, 2024, status conference Plaintiff was given until December 30, 2024, to file the instant Motion to Compel following a review of Defendants reproduced responses to Plaintiff's discovery requests. [*See* **Exh. 10**, Minute Entries Nov. 2024]. Plaintiff was granted an extension to file his Motion through January 9, 2025. [**ECF No. 72**].

deficiencies remain. A comprehensive review of Defendant's *DWB* productions reveals the following categories of materials are still missing or incomplete:

    a. Body-Worn Camera and Dashcam Footage Records (**RFP Nos. 14, 15, 18, 22**);

    b. Policies and Training Documents Specific to Crowd Control Tactics (**RFP Nos. 12, 19, 24**);

    c. Personnel, Training, and Disciplinary Records (**RFP Nos. 3, 7**);

    d. Dispersal Orders and Arrest Documentation (**RFP Nos. 20, 21**);

    e. Internal Communications and Incident-Specific Records (**RFP Nos. 1, 2, 4, 9, 16, 25**);

    f. Investigation Records into Specific Allegations (**RFP Nos. 13, 15, 17**);

    g. Oversight Documentation Reviewed or Generated by Key Officials (**RFP Nos. 12**);

    h. Use of Force and Citizen Complaint Records (**RFP Nos. 3, 5, 7, 10**);

    i. Communications with Media and Third Parties (**RFP No. 27**);

    j. Trial Exhibits and Expert Disclosures (**RFP Nos. 26, 28**);[4]

    k. Documentation of Allegations and Citizen Interactions (**RFP Nos. 8, 11, 23**).

27.  The deficiencies outlined above demonstrate that Defendants' reliance on prior productions fails to satisfy their obligations to provide responsive materials.

28.  In addition to the outstanding material listed above, Defendants have also

---

[4] Plaintiff acknowledges that the trial date has not yet been set and that expert disclosures are governed by a separate disclosure deadline. Accordingly, Plaintiff understands that Defendants may produce trial exhibits and expert-related materials closer to relevant disclosure deadlines, and information responsive to this request may be forthcoming.

yet to produce the requested MAS profiles of DPD officers that Defendants *agreed* to send to supplement their response to RFP No. 2 requesting a photo array of all relevant officers.

29.  On or about December 19, Plaintiff sent to Defendants a list of DPD officers who were present on the night of May 29, 2020, when Plaintiff was assaulted, for the purposes of facilitating Defendants' production of the officer's MAS profiles.

30.  On December 23 Defendants objected to Plaintiff's list and requested it be narrowed. In response, Plaintiff narrowed his list and resent it to Defendants. [**Exh. 15,** *Pls Email to Defs re Amended DPD Officer List, 12-24-24*]. As of this Motion, Plaintiff has yet to receive the MAS profiles of the identified officers.

31.  Despite Defendants' repeated assurances and the supplemental production of materials from *Detroit Will Breathe*, their responses to Plaintiff's *Second Requests for Production* remain incomplete and deficient.

32.  The outstanding discovery is critical to Plaintiff's claims, both in establishing the actions and accountability of individual officers, as well as the patterns and practices underpinning Plaintiff's *Monell* claim against the City of Detroit. Defendants' continued failure to produce the requested materials not only substantially undermines Plaintiff's ability to litigate his case effectively but also plainly violates Defendants' obligations under Fed.R.Civ.P. 26 and 34. Plaintiff

respectfully requests that the Court compel Defendants to produce all outstanding

discovery without further delay.

**Second Set of Interrogatories [Exh. 3].**

33. On or about June 28, 2024, Plaintiff served his *Second Set of Interrogatories* on Defendants. The interrogatories, summarized below and reproduced in full as Exhibit 3 attached hereto, sought the following relevant and discoverable information:

a. **ROG No. 1:** Identify by name, job title, and job description, the individual(s) answering these Interrogatories, the individual(s) who have assisted in answering these interrogatories; and all documentation which has been used and/or referenced in responding to these interrogatories.

b. **ROG No. 2:** Identify all Detroit Police Department Members, employees and/or agents of Defendant City of Detroit who had any contact with Plaintiff Davion Pipkins on May 29-30, 2020, including the time of contact and associated documentation or media.

c. **ROG No. 3:** whether Defendant City of Detroit investigated any claims of misconduct related to the May–September 2020 protests beyond the Force Investigation of Plaintiff's case, identifying the responsible offices, generated documentation, findings, and related conclusions.

d. **ROG Nos. 5-12**: For the following affirmative defenses asserted: 1, 4-10, please provide: (1) a detailed factual basis for the defense, (2) the name and addresses of any supporting witnesses; and (3) all supporting documentation relevant to the asserted defense.

e. **ROG No. 13**: Identify all court actions in which any Defendant was named, including complete case citations, party names, forums, docket numbers, attorneys, dates, and outcomes.

34. On or about September 12, 2024, Plaintiff received Defendants'

purported Responses to Plaintiff's Second Set of Interrogatories. [**Exh. 16**, *Def Answers to Pl 2d Roggs*, 9/12/24].

35. As with Defendants' Responses to Plaintiff's RFPs, the Answers to Plaintiff's Second Set of Interrogatories were incomplete, unresponsive, and riddled with largely inapplicable boilerplate objections as follows:

    a. Defendants objected to ten out of thirteen of Plaintiff's interrogatories (**ROG Nos. 1, 5-13**) as overly broad without explanation;

    b. The interrogatory requesting investigation information arising out of the protest at which Plaintiff was assaulted (**ROG No. 3**), was objected to as irrelevant without explanation;

    c. Each interrogatory requesting information on Defendants' affirmative defenses (**ROG Nos. 5-13**) was objected to on the grounds that the requests seek legal conclusions or narratives without explanation;

    d. The request for information regarding court actions involving the Defendants (**ROG No. 13**) was challenged as vague without explanation.

36. Defendants' Responses are also littered with inappropriate objections based on claims of privilege for which Defendants provide no explanation or adequate privilege log, and to which they are not entitled:

    a. Attorney-Client/Work Product Privilege (**ROG Nos. 1, 3, 5-12**)

    b. Law enforcement privilege (**ROG No. 3**)

    c. Deliberative Process Privilege (**ROG No. 3**).

37. The failure to comply with basic requirements of discovery has made it impossible to proceed with meaningful depositions in this case, thus causing ongoing undue delay, and prejudicing Plaintiff's right to seek full vindication for the violation

of his Constitutional rights that occurred on May 29, 2020.

**WHEREFORE**, for the reasons stated above and supported in the accompanying Brief, Plaintiff respectfully requests that this Honorable Court enter an Order compelling discovery, directing Defendants, within 10 days of the Order's entry, to:

A. Fully produce all documents and materials responsive to Plaintiff's First and Second Requests for Production, including unredacted versions of improperly redacted documents, or documents withheld based on false assertions of privilege.

B. Fully and completely answer each of Plaintiff's Second Set of Interrogatories, including identifying all individuals and documents relevant to Plaintiff's claims.

Plaintiff further requests all other relief determined to be reasonable and just by this Court, including but not limited to attorneys' fees and costs for the necessity of filing this Motion.

Respectfully submitted,

*s/Julie H. Hurwitz*
Julie H. Hurwitz (P34720)
Dayja S. Tillman (P86526)
**Goodman Hurwitz & James, P.C.**
1394 East Jefferson Avenue
Detroit, MI 48207
(313) 567-6170
Jhurwitz@goodmanhurwitz.com
dtillman@goodmanhurwitz.com
mail@goodmanhurwitz.com

*s/ Allison L. Kriger*
Allison L. Kriger (P76364)
**LaRene & Kriger, PLC**
500 Griswold Street, Ste. 2400
Detroit, MI 48226
(313) 550-3630
AKriger@LaReneKriger.com

*Attorneys for Plaintiff*

Dated: January 9, 2025

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF ALL DOCUMENTS AND THINGS RESPONSIVE TO
REQUESTS FOR PRODUCTION AND TO PROVIDE FULL AND
COMPLETE ANSWERS TO INTERROGATORIES**

## TABLE OF CONTENTS

INTRODUCTION .................................................................1

APPLICABLE LAW ..............................................................1

ARGUMENT .......................................................................3

I.   The Discovery Requested by Plaintiff is Essential to Establishing His Individual and Municipal Liability Claims. ...........................................4

   A.  Plaintiff Is Entitled To The Records Necessary To Identify The DPD Members Who Perpetrated The Assault On Him On May 29, 2020, And To Establish The Customs, Policies, And Procedures That Caused His Injuries. ...4

   B.  Plaintiff is Entitled to the Individual Defendants' Personnel Files, Disciplinary Records and Training Records. ....................................................10

   C.  Plaintiff is Entitled to Documents Necessary to Prove His *Monell* Claim. 12

II.   Defendants' Incomplete Interrogatory Responses Impede Plaintiff's Ability to Prove His Claims. ..........................................................17

III.   Defendants Assert Improper Objections in Lieu of Providing Complete Substantive Responses..........................................................20

   A.  Defendants' Responses Are Riddled With Improper Boilerplate Objections. ..........................................................................20

   B.  Defendants' Claims of "Privilege" Are Inappropriate and Inapplicable....23

# INDEX OF AUTHORITIES

## <u>Cases</u>

*Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, No. 14-cv-10922, 2016 WL 3418554 (E.D. Mich. June 22, 2016) ................................................26

*Beck v. City of Pittsburgh*, 89 F.3d 966 (3d Cir. 1996) ................................16

*Bell v. City of Southfield*, 37 F. 4th 362 (6th Cir. 2022)................................6

*Bordanaroi v. McLeod*, 871 F.2d 1151 (1st Cir. 1989) ...............................12

*Brandon v. Holt*, 464 U.S. 469 (1985) ........................................................14

*Canton v. Harris*, 489 U.S. 378 (1989)........................................................14

*Coates v. City of Detroit*, No. 22-CV-10378, 2024 WL 1606064 (E.D. Mich. Apr. 12, 2024)..........................................................................................6

*Covad Comm. Co. v. Revonant, Inc.*, 258 F.R.D. 5 (D.D.C. 2009) .........................3

*Cratty v. City of Allen Park*, No. 17-11724, 2018 WL 7351683 (E.D. Mich. May 21, 2018)..............................................................................................13

*Cratty v. City of Wyandotte*, 296 F. Supp. 3d 854 (E.D. Mich. 2017) ....................25

*D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014) .............................17

*Davis v. Bragg*, No. 2:11-CV-15262, 2015 WL 5244301 (E.D. Mich. Sept. 8, 2015) ......................................................................................................1, 3

*Davis v. City of Springfield, Il*, No. 04-3168, consolidated with No. 07-3096 (C.D. Ill. Jan. 30, 2009) ..................................................................................23

*Detroit Will Breath et al v. City of Detroit el al*, Docket No. 20-12363 .................18

*E. & J. Gallo Winery v. Cantine Rallo, S.p.A.*, 2006 WL 3251830 (E.D. Cal. Nov.8, 2006)..............................................................................................22

*Eberle v. Wilkinson*, No. 03-272, 2005 WL 1984435 (S.D. Ohio Aug. 17, 2005).....2

*Foley v. Lowell*, 948 F.2d 10 (1st Cir. 1991)...............................................12

*Frails v. City of New York*, 236 F.R.D. 116 (E.D.N.Y. 2006) .................................12

*Fresenius Med. Care Holdings, Inc. v. Roxane Lab'ys, Inc.*, No. 205-CV-0889, 2007 WL 527903 (S.D. Ohio Feb. 14, 2007) ................................................23

*Hoosier v. Wendy Liu*, No. 2:16-CV-10688, 2017 WL 5132703 (E.D. Mich. Nov. 6, 2017).................................................................................................2

*In re Packaged Ice Antitrust Litig.*, No. 08-01952, 2011 WL 1790189 (E.D. Mich. May 10, 2011)..........................................................................................28

*Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987) .....................................28

*Mann v. Helmig*, 289 Fed. App'x 845 (6th Cir. 2008) ...........................................15

*Metris-Shamoon v. City of Detroit*, 335 F.R.D. 387 (E.D. Mich. 2020) .................29

*Miller v. Vill. of Pinckney*, No. 07-10928, 2007 WL 4357724 (E.D. Mich. Dec. 11, 2007) ........................................................................................................3, 11

*Monell v. Department of Social Services*, 436 U.S. 658 (1978)  .................... passim

*N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132 (1975)........................................28

Perry v. City of Pontiac, No. 07-14036, 2011 WL 4345239 (E.D. Mich. Sept. 16, 2011) ......................................................................................................11, 16

*Reid v. Shoudy*, No. 23-11358, 2024 WL 4697671 (E.D. Mich. Nov. 6, 2024) ......28

*Sanford v. City of Detroit*, 355 F. Supp. 3d 619 (E.D. Mich. 2019) ....... 6, 12, 15, 17

*Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200 (E.D. Mich. 2018)................24

*Snyder v. Fleetwood RV, Inc.*, No. 2:13-cv-1019, 2015 WL 13002292 (S.D. Ohio Jan. 30, 2015) ...................................................................................................3

*State Farm Mut. Auto. Ins. Co. v. Max Rehab Physical Therapy, LLC*, No. CV 18-13257, 2020 WL 12763079 (E.D. Mich. July 19, 2020)......................... 8, 25, 26

*Strategic Mktg. & Research Team, Inc. v. Auto Data Sols., Inc.*, No. 2:15-CV-12695, 2017 WL 1196361 (E.D. Mich. Mar. 31, 2017) ................................................24

*Thomas v. Cook Cnty. Sheriff's Dep't,*, 604 F.3d 293 (7th Cir. 2010) .....................18

*Wesley Corp. v. Zoom T.V. Prod., LLC*, No. 17-10021, 2018 WL 372700, (E.D. Mich. Jan. 11, 2018)............................................................................................2

*Williams v. City of Chicago*, 672 F. Supp. 3d 599 (N.D. Ill. 2023) ..........................5

## Statutes

42 U.S.C. §1983 ......................................................................................................14

## Rules

Fed.R.Civ.P. 26(b)(1) ................................................................................................1

Fed.R.Civ.P. 33(d) ..................................................................................................22

Fed.R.Civ.P. 37 .........................................................................................................2

Fed.R.Civ.P. 37(a)(3)(B) ..........................................................................................2

Fed.R.Civ.P. 37(a)(4) ................................................................................................2

Fed.R.Civ.P. 37(a)(5)(A) ..........................................................................................3

**INTRODUCTION**

Plaintiff relies on his Motion, attached hereto, for a full recitation of the underlying facts, basis of this §1983 cause of action, and the history and chronology of Plaintiff's ongoing efforts to obtain the discovery necessary for the full and fair adjudication of his claims.  First and foremost, because none of the officers who were seen on video assaulting Mr. Pipkins on the night of May 29, 2020, and who subsequently arrested him, neither prepared any reports from their interactions with or subsequent arrest of Plaintiff, nor were equipped with Body Worn Cameras (BWCs) that night, the full and complete production of the discovery is essential to both assisting with the ongoing attempt to identify those officers, as well as to establish the supervisory and municipal bases of liability in this case.

**APPLICABLE LAW**

The scope of discovery is governed by Fed.R.Civ.P. 26(b)(1), which, in pertinent part, permits parties to "…obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Courts have consistently recognized that the scope of discovery under this rule is "traditionally quite broad." *Davis v. Bragg*, No. 2:11-CV-15262, 2015 WL 5244301, at *1 (E.D. Mich. Sept. 8, 2015), quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) ("…the Federal Rules of Civil Procedure strongly favor full discovery whenever possible . . ."). In civil rights cases, where

1

there is an important federal interest in vindicating substantive constitutional rights, such as those embodied in 42 U.S.C. §1983, courts permit especially broad discovery. *Eberle v. Wilkinson*, No. 03-272, 2005 WL 1984435, at *1 (S.D. Ohio Aug. 17, 2005) (citing *United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 657 (6th Cir. 1976)).

Under Fed.R.Civ.P. 37, a party may move to compel discovery if the opposing party fails to provide appropriate responses to requests for production or interrogatories. Fed.R.Civ.P. 37(a)(3)(B). Moreover, Rule 37 treats "an evasive or incomplete disclosure, answer, or response" as a failure to disclose, answer, or respond. Fed.R.Civ.P. 37(a)(4); *Hoosier v. Wendy Liu*, No. 2:16-CV-10688, 2017 WL 5132703, at *3 (E.D. Mich. Nov. 6, 2017). Courts have held that evasive discovery practices warrant intervention and appropriate sanctions to ensure compliance. *Wesley Corp. v. Zoom T.V. Prod., LLC*, No. 17-10021, 2018 WL 372700, at *5 (E.D. Mich. Jan. 11, 2018).

In this case, Defendants' attempts to withhold discovery based on claims of confidentiality or privilege, without more, are unavailing. Courts have long held that "a concern for protecting confidentiality does not equate to privilege, and that information and documents are not shielded from discovery on the sole basis that they are confidential." *Snyder v. Fleetwood RV, Inc.*, No. 2:13-cv-1019, 2015 WL 13002292, at *4 (S.D. Ohio Jan. 30, 2015) (internal quotation marks and citations

2

omitted). Instead, confidentiality concerns are appropriately addressed through protective orders, not outright refusals to produce discoverable material. See *Covad Comm. Co. v. Revonant, Inc.*, 258 F.R.D. 5, 11 (D.D.C. 2009).). *See also Miller v. Vill. of Pinckney*, No. 07-10928, 2007 WL 4357724, at *2 (E.D. Mich. Dec. 11, 2007).

Where a party fails to comply with its discovery obligations, the rules also provide for the imposition of reasonable expenses, including attorney's fees, incurred by the moving party in bringing the motion. Fed.R.Civ.P. 37(a)(5)(A). This provision ensures that parties are not unfairly burdened by the costs of addressing discovery abuses. *See Davis*, 2015 WL 5244301, at *2*.

As demonstrated below, Defendants have failed to provide complete and responsive answers to Plaintiff's First Expedited Requests for Production of Documents and Things, dated May 8, 2023 **[Exh. 1]**, Plaintiff's Second Request for Production of Documents and Things, dated June 28, 2024, **[Exh. 2]**, and Plaintiffs Second Set of Interrogatories, dated June 28, 2024, **[Exh. 3]**, thereby necessitating this motion.

Plaintiff respectfully requests that this Court order Defendants to produce the requested materials and further award reasonable expenses, including attorney's fees, incurred in bringing this motion.

**ARGUMENT**

3

I.  **The Discovery Requested by Plaintiff is Essential to Establishing His Individual and Municipal Liability Claims.**

A.  **Plaintiff Is Entitled to The Records Necessary To Identify The DPD Members Who Perpetrated The Assault On Him On May 29, 2020, And To Establish The Customs, Policies, And Procedures That Caused His Injuries.**

Defendants' failure to produce critical officer deployment records, body-worn camera and dashcam footage, complete arrest records, and electronic logs makes it virtually impossible for Plaintiff to identify the officers involved in the alleged misconduct and to substantiate the claims of free speech infringement, excessive force, unlawful arrest, malicious prosecution, and municipal liability.[1]

In his First Request for Production, dated May 8, 2023 **[Exh. 1]**, Plaintiff requested detailed records identifying all the officers deployed to the scene of the protests on May 29, 2020, including lists of officers, daily details, and other operational records. These deployment records are essential to identify the individual officers responsible for Plaintiff's injuries and to assess whether their conduct was consistent with training and departmental policies. The failure to produce these records directly obstructs Plaintiff's ability to establish which officers

---

[1] This is particularly important here, where, as the Court is aware, none of the individual officers who were directly involved in the assault and decision to arrest Mr. Pipkins without probable cause, ever prepared any police reports, use of force reports, or arrest reports, and none of them were equipped with Body Worn Cameras ("BWCs"), thus, without their identities Plaintiff is left without any recourse against these officers individually.

were present and involved in the conduct upon which Plaintiff's claims are predicated - a key element of Plaintiff's individual liability claims.

Defendants' incomplete production, which was limited to daily details without identifying specific officers from key units such as the Strike Force, Gang Intel, Tactical Ops, and Special Ops, is insufficient. These records are plainly discoverable and should have been produced under Rule 34, as they are directly relevant to Plaintiff's claims and necessary to identify officers involved in the alleged constitutional violations. See *Williams v. City of Chicago*, 672 F. Supp. 3d 599, 620-21 (N.D. Ill. 2023) (compelling production of documents detailing the absence of deployment records, specifically mobilization lists, noting they were crucial to plaintiff's claims).

Additionally, Defendants' failure to produce body-worn camera footage is equally egregious. Plaintiff specifically requested this footage, which is crucial to assessing officer conduct and interactions during the protests. Body-worn cameras are designed to provide an objective, contemporaneous record of interactions between officers and civilians, including incidents such as police protests. The footage can provide direct evidence of excessive force, unlawful arrests, and other misconduct, and it is a critical element of Plaintiff's ability to substantiate his claims. The footage would allow Plaintiff to directly evaluate the conduct of individual officers in the context of the events at issue. Defendants' failure to produce the body-

5

worn camera footage, especially after referencing its existence in their previous production, further undermines Plaintiff's case. Courts have repeatedly emphasized that body-worn camera footage is discoverable and vital in cases involving allegations of excessive force. See *Bell v. City of Southfield*, 37 F. 4th 362, 364 (6th Cir. 2022); *Coates v. City of Detroit*, No. 22-CV-10378, 2024 WL 1606064 (E.D. Mich. Apr. 12, 2024); *Sanford v. City of Detroit*, 355 F. Supp. 3d 619, 622 (E.D. Mich. 2019).

In response to Plaintiff's request for the footage, (Pls. Second RFPs, RFP #14 **[Exh. 2]**, (after asserting non-meritorious boilerplate objections) Defendants stated, "...see video produced in Defendant's Initial Disclosures and responses to Plaintiff's First Request for Production in *Detroit Will Breathe, et al. v. City of Detroit, et al.*" **[Exh. 12,** Defs' Resp to 2nd RFPs**].**  Upon Plaintiff's review of all the discovery from the *Detroit Will Breathe* litigation, notably, there were only seven (7) BWC videos from May 29, 2020, that were produced. Given that there were literally hundreds of officers that could be seen from the 7 videos that *were* produced, it is incredible that no other video footage exists. Despite Defendants' repeated assertion that they would produce additional BWC footage, **[***see*** Exhs. 7 and 11]**, nothing has yet been produced. To the extent Defendants' position is that any other body worn camera footage is either non-existent or now unavailable, Plaintiff is entitled to an

explanation for the absence and/or destruction of this evidence. [2]

Plaintiff further attempted to identify his assailants through the electronic logs and run sheets that are routinely used by DPD members to record their activities and whereabouts while in duty. Defendants, however, failed to produce the electronic logs and run sheets that were referenced in their incomplete production. And, in addition to providing information that will help Plaintiff identify the DPD members who caused his injuries, these logs are critical to understanding the operational context of the event, such as which officers were assigned to specific tasks, how they coordinated their actions, and what instructions were given. The failure to provide these logs leaves Plaintiff unable to fully assess the coordination and supervision of the officers involved, which is a key aspect of Plaintiff's supervisory liability claims.

---

[2] This information is directly relevant to either, or both, the Department's custom, policy, and practice regarding enforcing their own BWC written policy, and/or the possibility of a spoliation instruction. Indeed, according to a presentation made during a Board of Police Commissioner's meeting on February 4, 2021, an audit of DPD's BWC policy purportedly revealed DPD members' compliance with capturing events with BWCs was 98%. Despite this finding, Defendants have produced only a tiny fraction of the BWC videos that should exist from the night of Plaintiff's assault and arrest, i.e. seven videos out of more than 100 officers on the scene. On the other hand, of course, is that the widespread custom, policy, and practice on the night that Defendants violated Plaintiff's constitutional rights was to *avoid* capturing the events on BWC and/or to preclude its later availability. That this was, and remains, the Department's custom, policy, and/or practice was corroborated by a Detroit Board of Police Commissioner that DPD members' failure to wear BWCs has been a "growing issue," noting "…**other situations** where there's **peaceful protest in the City of Detroit where officers weren't wearing body-worn cameras** a few years back." (Emphasis added). **[Exh. 17,** CBS article "*Detroit police commissioners raise concerns over lack of body cameras worn by officers,*" 6/13/24**]**.

The absence of these logs further prevents Plaintiff from evaluating the adequacy of the City of Detroit's supervision and training, which are essential elements of Plaintiff's *Monell* claims. The failure to produce the logs violates Rule 34's requirement to produce responsive materials within Defendants' possession, custody, or control. See *State Farm Mut. Auto. Ins. Co. v. Max Rehab Physical Therapy, LLC*, No. CV 18-13257, 2020 WL 12763079, at *2 (E.D. Mich. July 19, 2020) (holding that discovery abuses, including failure to either preserve objections by objecting with specificity or filing a timely motion for protective order or produce requested and referenced discovery, warranted sanctions under Rule 37).

In addition to the logs, Plaintiff's requests for dispersal orders and arrest records (RFP Nos. 20, 21) are also crucial to establishing individual liability. These records will allow Plaintiff to demonstrate the lawfulness of the police actions during the protest and whether specific officers violated Plaintiff's rights by arresting or using force unlawfully. Dispersal orders, in particular, are essential to understanding the legal justification for the actions taken by officers. The failure to produce these records means Plaintiff cannot prove whether the dispersal orders were valid, whether the arrests were lawful, or whether the officers involved followed proper procedures. Records related to arrest documentation and police orders are critical in cases involving allegations of false arrest and excessive force.

Plaintiff has further attempted to discover the identities of the DPD members

responsible for his harm by requesting photographs (stored in M.A.S.) of certain members who are reasonably believed to have been in the area when Plaintiff was assault and arrested. **[***See*** Exh. 2,** *Pls. 2nd RFPs*, #2 (6/28/24)**]**. Notwithstanding their earlier objections, **[Exh. 12,** *Defs. Resp. to Pls 2nd RFPs*, 9/12/24, #2**]**, Defendants agreed to produce, both at the parties' meet-and-confer on November 22, 2024, and in an email dated November 21, 2024. **[***See*** Exhs. 11** and **13]**. In an effort to facilitate the production of these images, Plaintiff provided a list of 110[3] officers who were reasonably likely to have interacted with Plaintiff. Still, as of this date, Defendants have neither responded nor produced any of the photographs.

The combined failure to produce the officer deployment records, body-worn camera footage, electronic logs, and photographs of DPD officers who were reasonably likely to have interacted with Plaintiff prejudices his ability to identify the officers involved, assess their actions, and hold both the individual officers, supervisors and the City of Detroit accountable for their conduct. These records are directly relevant to Plaintiff's claims of excessive force, unlawful arrests, and the City's failure to properly train, supervise, and discipline its officers in violation of *Monell*. Without these materials, Plaintiff cannot properly litigate the facts of this

---

[3] In the original list that was sent to Defendants, with 116 names, Plaintiff had inadvertently included six names that should not have been included (four "Air Command" and two "K-9 Unit" members). When brought to Plaintiff's attention, they agreed to withdraw those six names, **[Exh. 15,** JH EM 12/24/24**]**, leaving a total of 110 names, explaining why.

case or prove the pattern of misconduct that underpins his *Monell* claim.

Plaintiff respectfully requests that this Court compel Defendants to produce the missing records, including the officer deployment records, body-worn camera footage, electronic logs, and photographs, and impose appropriate sanctions for Defendants' continued failure to comply with their discovery obligations.

### B. Plaintiff is Entitled to the Individual Defendants' Personnel Files, Disciplinary Records and Training Records.

Defendants have failed to produce the personnel files, training records, and disciplinary histories for the named individual Defendants, which are directly responsive to Plaintiff's RFP Nos. 3 and 7. These records are critical to Plaintiff's individual liability claims against the officers and his *Monell* claim against Defendant City of Detroit.

Federal courts, including those in this District, have consistently held that police officer personnel files, including disciplinary and training records, are discoverable in cases involving allegations of police misconduct. Such records provide essential evidence regarding officer behavior, patterns of misconduct, and the adequacy of departmental training and supervision. See, e.g., *Perry v. City of Pontiac*, No. 07-14036, 2011 WL 4345239, at *3 (E.D. Mich. Sept. 16, 2011) (finding that personnel files "are sure to contain documentation that is highly relevant" to municipal liability claims); *Miller, supra,* at *2, (holding there is no general privilege for personnel files and ordering their production with limited

redactions for personal information).

Plaintiff alleges that the named individual supervisory Defendants engaged in unconstitutional conduct during the May 29, 2020, protests, including participating in and/or failing to prevent excessive use of force and false arrests, including that against Plaintiff. These personnel files, training records, and disciplinary histories are essential for understanding whether the officers' actions conformed to their training and whether they reflect patterns of behavior relevant to Plaintiff's claims. Courts have recognized that such materials are admissible to demonstrate patterns of misconduct under Federal Rule of Evidence 406 or for impeachment purposes. See *Sanford v. City of Detroit*, 355 F. Supp. 3d 619, 622 (E.D. Mich. 2019), (Finding, disciplinary records  relevant to establishing both patterns of misconduct and for impeachment purposes).

Plaintiff is similarly entitled to department-wide "[d]isciplinary records involving complaints of a similar nature, whether substantiated or unsubstantiated" to prove his *Monell* claim. *Frails v. City of New Yor*k, 236 F.R.D. 116, 117 (E.D.N.Y. 2006). This is true even if the incident upon which the disciplinary action was initiated was subsequent to the assault of arrest of Plaintiff here, as they can be probative and material of what policies, practices, or accepted customs existed at the time of the incident at issue See *Foley v. Lowell*, 948 F.2d., 10, 14 (1st Cir. 1991) ("Contrary to the City's exhortation that the date an incident occurs marks the outside

date for evidence-garnering on such an issue, we think that actions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the incident."); *Bordanaroi v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989) ("Post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right."); *Cratty v. City of Allen Park*, No. 17-11724, 2018 WL 7351683 (E.D. Mich. May 21, 2018), affirmed 2018 WL 3983806 (finding evidence of citizens' subsequent complaints and the city's treatment of them are discoverable for the plaintiff's claim that the city had an official policy to disregard alleged violations of citizens' rights).

Moreover, Plaintiff's *Monell* claim asserts that the City of Detroit, acting through the Detroit Police Department, maintained policies, customs, or practices that enabled or encouraged unconstitutional conduct. The requested training and disciplinary records are directly relevant to whether the City adequately trained, supervised, or disciplined its officers, particularly given Plaintiff's allegations of repeated misconduct by the named Defendants. The limited records produced to date fail to address these critical issues, leaving significant gaps in the discovery necessary to support Plaintiff's claims.

### C. Plaintiff is Entitled to Documents Necessary to Prove His *Monell* Claim.

Plaintiff's Complaint alleges that Defendant City of Detroit, acting through

the Detroit Police Department ("DPD"), ratified and/or approved improper police methods. Specifically, Plaintiff alleges that DPD policymakers and the department itself knew that Defendants used improper and excessive force, falsified evidence during the course of investigations, and were well aware of a pattern of misconduct, including excessive force, engaged by Defendants. This approval, ratification, and condonation of misconduct constitutes municipal policies, customs, and practices actionable under 42 U.S.C. §1983. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978); *Brandon v. Holt*, 464 U.S. 469 (1985); *Canton v. Harris*, 489 U.S. 378 (1989). Plaintiff seeks to prove that the City's customs, policies, and practices resulted in the violation of Plaintiff's constitutional rights, which is an essential component of the *Monell* claim.

The evidence needed to support the existence of such a policy or custom can be found in the City's policies, training documents, internal communications, oversight materials, media communications, and dispersal orders which are essential to understanding whether the actions of the individual officers were a result of official policies, customs, or practices. Plaintiff's requests for these documents are critical in establishing the existence of a municipal policy or custom. As the Sixth Circuit has outlined, to prove the existence of a municipality's policy or custom, plaintiffs can examine: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority;

13

(3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Mann v. Helmig*, 289 Fed. App'x 845, 848-49 (6th Cir. 2008) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

### 1. Policies and Training Records

Plaintiff's specific requests for policies and training records related to riot control tactics, use of force, and officer conduct during protests are designed to obtain exactly this type of evidence. Policies related to use of force, riot control tactics, and officer training directly pertain to whether the City has implemented adequate mechanisms to prevent unconstitutional conduct. Plaintiff's ability to prove that the City failed to supervise, train, or discipline its officers hinges on access to these records. *Sanford v. City of Detroit*, 355 F. Supp. 3d 619, 622 (E.D. Mich. 2019) (Plaintiff is entitled to production of policies and training records in a case alleging police misconduct); *Perry v. City of Pontiac*, No. 07-14036, 2011 WL 4345239, at *3 (E.D. Mich. Sept. 16, 2011) (compelling the production of training materials as highly relevant to a *Monell* claim).

### 2. Internal Communications, Incident Reports, Emails.

Plaintiff has also requested internal communications, incident reports, and emails, which are directly relevant to proving whether the City was aware of the officers' conduct and whether the Department had any involvement in tolerating or

ratifying unconstitutional behavior. Internal communications are critical for demonstrating whether there was coordination or oversight regarding the actions of the officers on the night of May 29, 2020, and whether there was any departmental response to the misconduct alleged. *Beck v. City of Pittsburgh*, 89 F.3d 966, 973 (3d Cir. 1996) (requiring production of internal communications as part of the discovery of municipal policies and customs). Defendants' failure to provide these materials obstructs Plaintiff's ability to demonstrate the City's knowledge and complicity in the actions of its officers.

### 3.  Oversight and Internal Investigation Records.

Finally, Plaintiff requested oversight and investigative materials, including Garrity statements, internal investigation reports and logs, and oversight reports, which would reveal the City's response to allegations of misconduct by DPD officers. These materials are indispensable for determining whether the City conducted proper investigations into the conduct of its officers and whether the City's failure to take corrective action contributed to the ongoing misconduct. *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014) (holding that unwritten or informal practices can form the basis of a *Monell* claim if they amount to a "pervasive custom or practice"); *Sanford*, 355 F. Supp. 3d at 622 (requiring the production of oversight and investigative materials as part of a *Monell* claim to demonstrate whether the City took corrective action against officers involved in

15

misconduct).

Defendants' failure to produce the requested policies, training materials, internal communications, and oversight materials thus hinders Plaintiff's ability to substantiate his *Monell* claim. These documents are directly relevant to proving that the City's customs, policies, and practices causally contributed to the constitutional violations alleged. Plaintiff respectfully requests that the Court compel Defendants to produce the requested materials in their entirety and to impose appropriate sanctions for their failure to comply with their discovery obligations.

### 4. Records pertaining to: a) Crowd Control Weaponry and b) Interaction between Detroit Police Department members and protestors and bystanders.

#### a. <u>Crowd Control Weaponry</u>

It is undisputed that DPD members widely used Crowd Control Weapons and techniques, such as tear gas, pepper spray, rubber bullets, batons, and shields, in response to protestors on May 29, 2020, the night Defendants assaulted and arrested Plaintiff, and in response to protesters throughout the summer of 2020. *See, generally*, ECF No. 18, Opinion and Order Granting in Part Plaintiffs' Motion for a Temporary Restraining Order, *Detroit Will Breath et al v. City of Detroit el al*, Docket No. 20-12363, Plaintiff is entitled to discover material pertaining to the utilization, authorization, and approval of these tactics to establish the existence of a written official policy or an implicit policy and, in turn, prove his *Monell* claim. See *Thomas v. Cook Cnty. Sheriff's Dep't,,* 604 F.3d 293, 303 (7th Cir. 2010) ("A local governing

body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority.") (citing *Monell*, 436 U.S. at 690, 98 S.Ct. 2018)).

### b. **Interaction Between DPD and Citizenry**

In that vein, material relating to the interaction between DPD members and protesters and bystanders between May 29 and September 30, 2020, will provide insight into and context for the utilization of Crowd Control Weaponry and tactics by DPD members, including Plaintiff's claim that such measures constituted excessive force and the Defendants' competing claim that such techniques were justified.

## II. **Defendants' Incomplete Interrogatory Responses Impede Plaintiff's Ability to Prove His Claims.**

Defendants have failed to provide complete and responsive answers to Plaintiff's interrogatories - specifically those aimed at identifying officers involved in the May 29, 2020, events (ROG Nos. 2-3), and the factual basis for Defendant's affirmative defenses (ROG Nos. 5-12). This failure obstructs Plaintiff's ability to develop the factual record necessary to prosecute his claims and adequately respond to Defendants' defenses.

Defendants' response to Interrogatory No. 2, including limited activity logs

and daily details, fails to provide a complete accounting of the officers who were present at the scene or their roles in the events of May 29, 2020. This information is essential to identifying key witnesses and assessing the conduct of individual officers.

Similarly, Defendants' response to Interrogatory No. 3 does not provide substantive details regarding investigations into officer misconduct during protests. For instance, Defendants fail to clarify whether the Office of the Chief Investigator, Internal Affairs, or other sections of the Department conducted investigations into the claims, neglecting to identify relevant documents or disclose findings of all such investigations. This information is significant for Plaintiff's *Monell* claim, as it bears directly on whether Defendant City of Detroit adequately investigated and addressed misconduct by Detroit Police Officers.

Perhaps most absurdly, in response to Plaintiff's reasonable requests for the factual basis underlying Defendants' affirmative defenses to Plaintiff's claims, Defendants responded with a litany of plainly inapplicable objections (e.g. overbroad, unduly burdensome) and invocations of privilege (e.g. subjective mental impressions, conclusions, opinions or legal theories of their attorneys, or other information protected from discovery by the work-product doctrine or attorney-client privilege). Notwithstanding these frivolous objections and assertions of privilege, Defendants "answered" these interrogatories by simply referring Plaintiff

to broad categories of documents. This is insufficient under Fed.R.Civ.P. 33(d).

While the Rule permits a party to reference documents, that rule is not without limitation. Where, as here, the volume of material referenced is substantial and Defendants repeatedly reference the same documents for each interrogatory, the burden is on Defendants as the responding party to identify with specificity which documents contain information responsive to each interrogatory. See e.g. *E. & J. Gallo Winery v. Cantine Rallo, S.p.A.*, 2006 WL 3251830 at *3 (E.D. Cal. Nov. 8, 2006) (The court found that "[b]ased on the volume of documents identified, and the repeated reference to the same documents in responding to all of the interrogatories," it would be less burdensome for the responding party, "who is far more familiar with its records and business, to provide the responses to the interrogatories based on the documents, than for [the requesting party] to attempt to ferret the information from the various documents.") (Cited with approval by *Sungjin Fo-Ma, Inc. v. Chainworks, Inc.*, No. CIV.A.08CV12393, 2009 WL 2022308, at *5 (E.D. Mich. July 8, 2009)). This is, of course, a sensible proposition given "[t]here is a value in having an interrogatory answer be clear and precise so that it can be used either as the basis for further discovery, as the basis for a request for a stipulation, or even for impeachment at trial." *Fresenius Med. Care Holdings, Inc. v. Roxane Lab'ys, Inc.*, No. 205-CV-0889, 2007 WL 527903, at *2 (S.D. Ohio Feb. 14, 2007).

Defendants' failure to provide substantive responses to Plaintiffs

Interrogatories Nos. 5-12, which seek the basis for their affirmative defenses, hinders Plaintiff's ability to properly address and rebut these defenses. Courts generally recognize the necessity of compelling complete responses to interrogatories addressing affirmative defenses, particularly in ensuring defendants provide a factual basis for their claims. *See Davis v. City of Springfield, Il*, No. 04-3168, consolidated with No. 07-3096 (C.D. Ill. Jan. 30, 2009) (compelling responses to Plaintiff's interrogatory requesting for each if its twelve affirmative defenses that the defendant "state the facts upon which it bases the defenses…"). The lack of substantive responses also prejudices Plaintiff's ability to depose witnesses, evaluate potential motion, and effectively prepare for trial. Without the factual underpinnings of Defendant's defenses, Plaintiff cannot determine whether these defenses have any basis in fact or law, delaying the fair and efficient resolution of this case.

### III. **Defendants Assert Improper Objections in Lieu of Providing Complete Substantive Responses.**

#### A. **Defendants' Responses Are Riddled with Improper Boilerplate Objections.**

Defendants' responses to Plaintiff's discovery requests are riddled with boilerplate objections, which have no merit and fail to comply with the Federal Rules of Civil Procedure and controlling case law and should, therefore, be viewed by this Court as a waiver.

Rule 34(b)(2)(B) requires objections to discovery requests to be specific and to state whether any responsive materials are being withheld. Boilerplate objections,

such as those asserted by Defendants, are legally insufficient and amount to a waiver of objections. *See Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 209–10 (E.D. Mich. 2018) ("Boilerplate objections are legally meaningless and amount to a waiver of an objection."); accord *Strategic Mktg. & Research Team, Inc. v. Auto Data Sols., Inc.*, No. 2:15-CV-12695, 2017 WL 1196361, at *2 (E.D. Mich. Mar. 31, 2017); *State Farm Mut. Auto. Ins. Co. v. Max Rehab Physical Therapy, LLC*, No. CV 18-13257, 2020 WL 12763079, at *2 (E.D. Mich. July 19, 2020) ("[Boilerplate objections] are improper, insufficient, and will not be considered by the Court.").

For example, Defendants objected to RFP Nos. 5, 7, and 9 as "irrelevant and disproportionate," **[Exh. 12,** *Defs Resp to Pls Second RFPs, 9/12/24***]**, yet failed to articulate any specific grounds for their objections or explain how these requests— seeking information directly related to officer conduct and departmental policies— could be irrelevant to Plaintiff's claims. Similarly, Defendants objected to RFP Nos. 12 and 15 as "overly broad, vague, and unduly burdensome," **[*Id.*]**, without providing evidence or examples to substantiate their assertions.

In some instances, Defendants objections that certain information is not in their possession or equally available to Plaintiff are outright absurd. In response to RFP Nos. 1, 4, and 7, for example, the Defendant object to requests for Defendants' *own records*, such as officer identifications, disciplinary histories, and internal communications.

21

Such generalized objections are explicitly rejected by this Court. See *Cratty v. City of Wyandotte*, 296 F. Supp. 3d 854, 859 (E.D. Mich. 2017), ("[I]f a party objects to a request for production, the objection must state whether any responsive materials are being withheld and state the basis for that objection with specificity.").

As this Court has previously held, such objections lack credibility and must be rejected. See *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, No. 14-cv-10922, 2016 WL 3418554, at *3 (E.D. Mich. June 22, 2016), ("The filing of boilerplate objections is tantamount to filing no objections at all.").

Ultimately, "defendants did not preserve their objections," given they failed to "object[ ] with specificity or fil[e] a timely motion for protective order... The general rule is that a party waives any objection by failing to object [with specificity] or move for a protective order within 30 days of being served with the requests." *Max Rehab Physical Therapy, LLC*, *supra*, at *2.[4]

Defendants' improper reliance on boilerplate objections has obstructed discovery and delayed the resolution of critical factual issues in this case. Plaintiff respectfully requests that this Court overrule these objections, compel full compliance with Plaintiff's discovery requests, and consider sanctions to deter

---

[4] Additionally, at least one sitting Magistrate Judge in this Court has incorporated these principles into his own guidelines. See "Practice Guidelines for Magistrate Judge Anthony Patti, Discovery" ("In responding to discovery requests, form or boilerplate objections shall not be used and, if used, may subject the party and/or its counsel to sanctions.")

further misuse of the discovery process. To extent Defendants "expected the Court to use the hearing to review one-by-one each of the dozens of outstanding discovery requests, hear argument on each, and declare whether the requested discovery should be compelled...That type of micromanagement is not the function of this Court." *Id.*

### B. Defendants' Claims of "Privilege" Are Inappropriate and Inapplicable.

Defendants also broadly assert privileges, including the "law enforcement" and "deliberative process" privileges, to withhold personnel and disciplinary records, body-worn camera logs, and other critical materials. However, these privileges are qualified, not absolute, and do not apply to this case. Defendants bear the burden of demonstrating their applicability with specificity. See *In re Packaged Ice Antitrust Litig.*, No. 08-01952, 2011 WL 1790189, at *6 (E.D. Mich. May 10, 2011). This requires Defendants to provide an affidavit or declaration supporting their claims, as well as demonstrating specific harm from disclosure. See *Kelly v. City of San Jose*, 114 F.R.D. 653, 669 (N.D. Cal. 1987). Defendants have failed to meet this burden, leaving their privilege assertions procedurally and substantively deficient.

Moreover, the "deliberative process" privilege does not shield factual or investigative materials, such as personnel and disciplinary records, use-of-force reports, or body-worn camera malfunction logs. *See N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 151 (1975). The materials at issue in this case do not reflect pre-

decisional deliberations but rather, document the actions and performance of individual officers during the May 29, 2020, protests. Courts in this circuit have routinely held that such factual materials fall outside the scope of any alleged "deliberative process" privilege. *See Reid v. Shoudy*, No. 23-11358, 2024 WL 4697671, at *2 (E.D. Mich. Nov. 6, 2024).

Similarly, Defendants' assertion of the "law enforcement" privilege lacks the requisite support. To invoke this privilege, the extent to which it exists, Defendants must show a formal claim by the department head after personal consideration of the materials, identify specific harm from disclosure, and demonstrate that the harm outweighs the need for the information. See *Metris-Shamoon v. City of Detroit*, 335 F.R.D. 387, 391–92 (E.D. Mich. 2020). Defendants have shown no such claim, nor have they explained how the disclosure of body-worn camera records, disciplinary files, or internal communications would jeopardize law enforcement operations.

Defendants' reliance on unsupported generic "privilege" assertions has further delayed the discovery process and obstructed Plaintiff's ability to pursue both individual and *Monell* liability claims. Plaintiff respectfully requests that the Court find these privileges waived or, alternatively, require Defendants to submit a compliant privilege log and provide the withheld materials for *in camera* review.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court compel Defendants to produce all documents and things responsive to Plaintiffs Request for

Production, and to provide full and complete answers to Plaintiff's Interrogatories as outlined in Plaintiff's Motion and accompanying Brief in Support. Plaintiff further requests that the Court overrule Defendants' improper objections and grant such other relief as the Court deems just and proper, including but not limited to an award of costs and reasonable attorney fees, pursuant to Fed.R.Civ.P.37(5)(A).

Respectfully submitted,

*s/Julie H. Hurwitz*
Julie H. Hurwitz (P34720)
Dayja S. Tillman (P86526)
**Goodman Hurwitz & James, P.C.**
1394 East Jefferson Avenue
Detroit, MI 48207
(313) 567-6170
jhurwitz@goodmanhurwitz.com
dtillman@goodmanhurwitz.com
mail@goodmanhurwitz.com

*s/ Allison L. Kriger*
Allison L. Kriger (P76364)
**LaRene & Kriger, PLC**
500 Griswold Street, Ste. 2400
Detroit, MI 48226
(313) 550-3630
AKriger@LaReneKriger.com

*Attorneys for Plaintiff*

Dated: January 9, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2025, I caused the foregoing Plaintiff's Motion to Compel Production of All Documents and Things Responsive to Requests for Production and to Provide Full and Complete Answers to Interrogatories, to be served upon all counsel of record via the Court's CM/ECF filing system, which will send notification to the above captioned attorneys of record.

Date: January 9, 2025                          /s/ *Kyle Bryant*
                                                         Legal Assistant
                                                         Goodman Hurwitz & James, P.C.

2